UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

YVONNE THOMAS, )
)
    Plaintiff, )
)
    vs. ) Case number 4:03cv1114 TCM
)
ST. LOUIS BOARD OF POLICE )
COMMISSIONERS, et al., )
)
    Defendants. )

## MEMORANDUM AND ORDER

This action has its genesis in events that occurred in June 2002. Plaintiff, Yvonne Thomas, alleges in her third amended complaint that those events violated her civil rights and were a malicious abuse of process and intentional inflection of emotional distress. Defendants argue that they are entitled to summary judgment in each of Plaintiff's five counts.

## Background

Defendants Jerry Lattimore and Andre Smith, two police officers with the City of St. Louis, entered Plaintiff's backyard late in the evening of June 9, 2002. (Pl. Ex. B[1] ¶¶ 2, 4.) They did not have a warrant; however, Plaintiff's son unlocked the gate. (Pl. Ex. A at [12], [16].) Officer Smith avers that the neighbor whose complaint they were responding to "alleged that [Plaintiff] had . . . earlier in the evening . . . had been flourishing a gun in the direction of his home as well." (Id. ¶ 3.) Officer Smith further avers that:

---

[1]Although both parties submitted Officer Smith's affidavit as an exhibit, only Plaintiff submitted a signed, notarized copy. The Court will, therefore, refer to Plaintiff's submission.

>    []      We [Smith and Lattimore] contacted [Plaintiff] in the backyard of her home where we observed [Petitioner] and it appeared she had been consuming wine. At first she appeared calm but she became agitated quickly after her neighbor was mentioned. During that period of agitation, [Plaintiff] claimed she was pregnant with her neighbor's child. Following a period of agitation [Plaintiff] became calm.
>
>    []      During our time at [Plaintiff's] home we spoke with a person believed to be [Plaintiff's] son. He indicated to us that [Plaintiff] might suffer from an unidentified form of mental illness.
>
>    []      I was skeptical about [Plaintiff's] pregnancy claims because she appeared to be beyond normal child-bearing years . . .
>
>    []      [Plaintiff's] behavior caused officer Lattimore and myself to become concerned about her stability.

(Id. ¶¶ 4-7.)

Plaintiff's deposition testimony describes a different scenario. She had not had anything to drink and had just poured a glass of wine when the officers arrived and shone their lights on her house. (Pl. Ex. A at [15].) After they entered her backyard, she asked them what the problem was. (Id. at [18].) They did not answer her. (Id.) Instead, they took down boards she had tied to her fence and overturned some chairs. (Id. at [18]-[20].) Eventually, they approached her and, asked again what the problem was, told her there was no problem. (Id. at [21]-[22].) One of the two officers looked toward the house next door – where a woman in a see-through negligee appeared in a window – and "started talking filthy." (Id. at [6], [24]-[26], [29]-[30].) That officer continued to make "filthy" remarks. (Id. at [27].) After one particularly inappropriate remark, Plaintiff became angry. (Id.) She told him that he was "disrespecting" her, her children, and her grandchildren and that she would report him to his supervisor. (Id. at [28].) In response, he called her a name, handcuffed her, and told her he was arresting her. (Id.) After taking her into custody, the

officers "arranged for her to be transported to the Metropolitan St. Louis Psychiatric Center for evaluation." (Pl. Ex. B ¶ 8.)

She was admitted to the Psychiatric Center by Kulsoom Junaid, M.D. (Defs. Ex. H.) The admission record indicates a blood alcohol level of 0.131. (Id.) She was discharged from the Psychiatric Center on June 11. (Joint Stip. of Facts, 2/23/05, ¶ 8.)

In June 2002, only two of the six individual members of the St. Louis Board of Commissioners ("the Board") named as defendants were then on the Board. (Defs. Stat. of Material Facts ¶¶ 1-6.) Those two were Bartholomew Saracino, who was on the Board between March 2002 and January 2005, and Francis Slay, Mayor of the City of St. Louis, who has served on the Board as an ex officio member since April 2001. (Id. ¶¶ 5-6.)

In June 2002, the Board had a policy for "Handling Mentally Ill and Alcohol/Drug Dependant Persons." (Defs. Ex. G.) That policy required, inter alia, that a police officer could take an individual into custody, transport the person to a mental health facility, and request that he or she be admitted if the officer had "reasonable cause to believe that such person is suffering from a mental disorder and presents a likelihood of imminently serious physical harm to himself/herself or others, unless immediately taken into custody." (Id. at 2.) On arrival at the facility, the officer initiating the conveyance is to complete an application, under oath, that the officer has reason to believe that the person "is suffering from a mental disorder and presents a likelihood of serious physical harm to [her]self or others." (Id.) This application must be based on the officer's own personal observations and must include names and addresses of all person known to the officer who have knowledge, based on personal observation, of the relevant facts. (Id.) There is no evidence in the instant case that such an application was completed.

In Count I of her third amended complaint, Plaintiff alleges that the officers' behavior denied her (a) due process of law by taking her into custody and holding her against her will and by unreasonably searching her person and property and (b) equal protection by arresting her without a warrant and without reasonable grounds or probable cause to believe she had committed an offense and by arresting her only after she stated she would report her conduct to their superiors. In Count II, she alleges that her confinement in the Psychiatric Center violated her due process and equal protection rights because it was without cause. In Count III, she alleges that the officers were "acting under the direction and control of Defendant City of St. Louis Board of Police Commissioners." (Compl. ¶ 34.) Moreover, "[t]hat acting under color of law and pursuant to official policy or custom, defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis defendants' police officers in their duties to refrain from" "[u]nlawfully and maliciously" harassing and imprisoning a citizen, conspiring to violate Plaintiff's constitutional rights, and otherwise depriving her of her rights. (Id. ¶ 35.) Defendants also "failed to exercise duties to instruct, supervise, control, and discipline" the officers, did not use their power to prevent the wrongs, and recklessly or with gross negligence failed to prevent the wrongs. (Id. ¶ 36.) And, they approved or ratified the officers' unlawful acts. (Id. ¶ 37.)

Counts IV and V of Plaintiff's third amended complaint are state law causes of action: one for malicious abuse of process and the next for intentional inflection of emotional distress.

In their motion for summary judgment, Defendants argue that (1) the claims in Counts I and II against all defendants in their official capacities must be dismissed because the

defendants are State officials; (2) the claims in Counts I and II against the Board members in their individual capacities lack must be dismissed because they lack merit; (3) the claims in Counts I and II against Lattimore and Smith must be dismissed because each are entitled to qualified immunity; (3) the claims in Count III must be dismissed because they lack merit; and (4) the claims in Counts IV and V must be dismissed because all defendants are entitled to official immunity.

## Discussion

Standard of Review of Summary Judgment Motions. "Rule 56(c) [of the Federal Rules of Civil Procedure] 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" **Erenberg v. Methodist Hosp.**, 357 F.3d 787, 791 (8th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)) (alteration added). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). "A [party] facing a summary judgment motion cannot 'get to the jury without any significant probative evidence tending to support the complaint[,]'" but must

"make a sufficient showing on every essential element of its claim on which it bears the burden of proof." **Buettner v. Arch Coal Sales Co.**, 216 F.3d 707, 718 (8th Cir. 2000) (alterations added) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). And, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998). "'Evidence, not contentions, avoids summary judgment.'" **Larry v. Potter**, 424 F.3d 849, 851 (8th Cir. 2005) (quoting Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1036 (8th Cir. 2005)).

State Officials. Citing Smith v. State, 152 S.W.3d 275 (Mo. 2005) (en banc), Defendants first argue that the first two counts should be dismissed against the Board members because they are state officials. Defendants raised, successfully, this argument earlier in this case and raised it again, unsuccessfully, on appeal before the Eighth Circuit Court of Appeals. That court held, inter alia:

> The United States Supreme Court addressed the issue of the St. Louis Board [of Police Commissioners'] status for Eleventh Amendment purposes in Auer v. Robbins, 519 U.S. 452 (1997). . . . The Supreme Court rejected the St. Louis Board's assertion of sovereign immunity, holding that the St. Louis Board is not an arm of the state[.] . . . Recent developments in Missouri law appear to have eroded the Eleventh Amendment analyses in Auer and Gorman[ v. Easley, 257 F.3d 738 (8th Cir. 2001)]. . .
>
> These changes in Missouri's legal landscape, along with state statutes defining the character of the St. Louis Board, suggest that the St. Louis Board may be an arm of the state entitled to Eleventh Amendment immunity. The contrary holding in Auer, however, is directly on point and is binding. While Smith and the ensuing Missouri legislation may have undermined the status of Auer, the question is not free from doubt, and, in any event it is for the Supreme Court, not this Court, to overrule Supreme Court precedent. . .

Because Auer controls our decision in this case, we necessarily conclude that the St. Louis Board is not protected by Eleventh Amendment immunity.

**Thomas v. St. Louis Board of Police Comm'rs**, 447 F.3d 1082, 1085-87 (8th Cir. 2006) (alterations added).

The order appealed from in **Thomas** was one granting the Board members' motion to dismiss the remaining § 1983 claim against them in their official capacities and two pendent state law claims. The Court had earlier granted the Board members' motion for judgment on the claims of "false arrest" in Count I and "detention and confinement" in Count II.[2]

Plaintiff did not appeal that ruling. See **Thomas**, 447 F.3d at 1084 n.3. Under the law of the case doctrine, a settled issue in a case cannot be relitigated "except where the result would be manifestly unjust." **Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs.**, 443 F.3d 1005, 1013 (8th Cir. 2006). Thus, when a case has been considered on appeal, as has this case, "every issue disposed of on appeal has . . . been finally decided." **Id.** (alteration added). The law of the case doctrine precludes this Court from revisiting the issue.

<u>Counts I and II Against Board Members in Individual Capacities.</u> Insofar as Plaintiff's third amended complaint specifically alleges that the Board members are being sued in their individual capacities, unlike the second amended complaint,[3] those claims are without merit.

It is undisputed that Board members Jo Ann Freeman-Morrow, Michael Quinn, Julius Hunter, and Christopher Goodson were not on the Board in June 2002. Causation is a

---

[2]The two orders were directed at Plaintiff's second amended complaint. That complaint named only the Board members as defendants and sued them only in their official capacities. After remand, Plaintiff filed the pending third amended complaint adding the two officers as defendants and additionally suing the Board members in their individual capacities.

[3]See note 2, supra.

necessary element in a § 1983 case, **Kuha v. City of Minnetonka**, 365 F.3d 590, 606 (8th Cir. 2003), and "'can be established by direct personal participation in the deprivation or by participation setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injuries on third parties,'" **Hughes v. Stottlemyre**, 454 F.3d 791, 798 (8th Cir. 2006) (quoting Darnell v. Ford, 903 F.2d 556, 562 (8th Cir. 2006)). Clearly, causation has not been established as to the defendant Board members who were not on the Board in June 2002.

Defendant Board members Saracino and Slay were on the Board in 2002. "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." **Wilson v. Northcutt**, 441 F.3d 586, 591 (8th Cir. 2006). Accord **Doran v. Eckold**, 409 F.3d 958, 965 (8th Cir. 2005). Plaintiff has come forward with no evidence that either Saracino or Slay had any personal or direct involvement in the events giving rise to her claims.

For the foregoing reasons, the claims in Counts I and II against the Board members in their individual capacities will be dismissed. See **Thomason v. SCAN Volunteer Servs., Inc.**, 85 F.3d 1365, 1370 (8th Cir. 1996) (affirming grant of summary judgment to defendant sued in individual and official capacity; there was no evidence suggesting that defendant was personally or directly involved in the alleged constitutional violations or that, as a supervisor, "she knew about the allegedly unlawful conduct and facilitated, approved, condoned, or deliberately ignored the conduct").

<u>Counts I and II Against Lattimore and Smith.</u> Officers Lattimore and Smith argue that they are entitled to qualified immunity from Plaintiff's first two counts because it is "undisputed" that they made the "discretionary decision" to have her transported to the

Psychiatric Center rather than arrest her for flourishing a weapon and because her behavior caused them to be concerned about her emotional stability. (Defs. Mem. at 8.) It is disputed, however, why the officers chose to restrain Plaintiff and have her transported, against her will, to the Psychiatric Center. She has testified that the behavior problems were the officers' and that they restrained and transported her only after she threatened to report them for inappropriate, uncouth behavior.

A two-part analysis is engaged in when determining whether a defendant is entitled to qualified immunity. **Samuelson v. City of New Ulm**, 455 F.3d 871, 875 (8th Cir. 2006). "The first step is to determine whether, viewing the facts in the light most favorable to [the plaintiff], the officers' conduct violated a constitutional right." **Id.** (alteration added). If a constitutional right has been violated, [the Court] must then determine if such right was clearly established." **Id.** (alteration added). "For a right to be deemed clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." **Littrell v. Franklin**, 388 F.3d 578, 583 (8th Cir. 2004) (interim quotations omitted). "'In other words, if the officers' mistake as to what conduct the law required is reasonable, they are entitled to the immunity defense.'" **Samuelson**, 455 F.3d at 876 (quoting Kuha, 365 F.3d at 602). "This second step is a 'fact-intensive inquiry and must be undertaken in light of the specific context of the case, and not as a general proposition.'" **Id.** (quoting Littrell, 388 F.3d at 582).

Defendants argue they are entitled to qualified immunity because they reasonably believed Plaintiff posed a threat to herself and others; hence, they were taking her into custody and seeing that she was transported to the Psychiatric Center as part of their caretaking functions.

"'[P]olice officers are not only permitted, but expected, to exercise what the Supreme Court has termed 'community caretaking functions.'" **Samuelson**, 455 F.3d at 877 (quoting Winters v. Adams, 254 F.3d 758, 763 (8th Cir. 2001)) (alteration in original). "These functions include seizing a citizen 'in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity.'" **Id.** (quoting Winters, 254 F.3d at 763). "However, there are limits to the community caretaking function." **Id.** Whether the police officers exceeded these limits "'requires a reviewing court to balance the governmental interest in the police officer's exercise of his or her community caretaking function and the individual's interest in being free from arbitrary government interference.'" **Id.** (quoting Winters, 254 F.3d at 767).

Although Defendants take issue with Plaintiff's characterization of her being handcuffed, placed in a police car, and transported against her will to a Psychiatric Center as an "arrest,"[4] it was clearly established in 2002 that such acts were unconstitutional if done, as Plaintiff has testified, in response to being informed that they would be reported to their supervisors. Thus, in the instant case, whether officers Lattimore and Smith were exercising a community caretaking function or were retaliating against Plaintiff for exercising her right to say she was going to report them for inappropriate behavior is a factual question. Cf. **Saucier v. Katz**, 533 U.S. 194, 208 (2001) (finding that officer who shoved plaintiff in van

---

[4]In a case cited by Defendants, **Halvorsen v. Baird**, 146 F.3d 680, 684 (9th Cir. 1998), the court held that whether a detention is an arrest depends on the circumstances. The plaintiff in that case filed a § 1983 case against, among others, the police officers who handcuffed and transported him to a detoxification facility. This aspect of his case was tried to a jury; the court did not reach the question of qualified immunity. **Id.** at 685. See also **Walker v. City of Orem**, 451 F.3d 1139, 1147 (10th Cir. 2006) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").

and briefly detained him was entitled to qualified immunity because he had a legitimate justification – plaintiff reasonably might pose threat to Vice President – for his actions).

Claims in Count III. The only evidence Plaintiff submits in support of her claims in Count III are the conclusory allegations in that count that the officers were "acting under the direction and control of Defendant City of St. Louis Board of Police Commissioners"; "[t]hat acting under color of law and pursuant to official policy or custom, defendants knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis defendants' police officer in their duties to refrain from" "[u]nlawfully and maliciously" harassing and imprisoning a citizen, conspiring to violate Plaintiff's constitutional rights, and otherwise depriving her of her rights; that they did not use their power to prevent the wrongs and recklessly or with gross negligence failed to prevent the wrongs; and that they approved or ratified the officers' unlawful acts. (Compl. ¶¶ 35-37.)

"Supervisors can be individually liable if they directly participate in a constitutional violation of if they failed to supervise and train officers." **Johnson v. Blaukat**, 453 F.3d 1108, 1113 (8th Cir. 2006). Accord **Andrews v. Fowler**, 98 F.3d 1069, 1078 (8th Cir. 1996). "The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts." **Id.** "[M]ere negligence in failing to detect and prevent a subordinate's conduct is not enough for liability under Section 1983." **Ripson v. Alles**, 21 F.3d 805, 809 (8th Cir. 1994) (alteration added). As noted above, Plaintiff has failed to put forward any evidence of the Board members' involvement in or authorization of the officers' allegedly unconstitutional acts. Plaintiff has also failed to produce any evidence that the members were responsible for and yet failed to supervise and train the officers.

The only evidence before the Court of any Board action or inaction is the policy governing police officers' handling of a mentally ill person. To prove a policy, custom, or action, Plaintiff must show, in addition to causation, a "'continuing, widespread, persistent pattern of unconstitutional misconduct'" by the police officers and "'[d]eliberate indifference to or tacit authorization of such conduct'" by the police officers after notice to the Board of the misconduct. **Crumpley-Patterson v. Trinity Lutheran Hospital**, 388 F.3d 588, 591 (8th Cir. 2004) (quoting S.J. v. Kansas City, Missouri, Public School Dist., 294 F.3d 1025, 1028 (8th Cir. 2002)) (alteration in original). Plaintiff has failed to do so.

Thus, insofar as Plaintiff seeks to hold the Board members liable for Lattimore's and Smith's actions under a theory that they were acting under color of law and pursuant to official policy or custom, she has failed to introduce any evidence in support of such a theory.[5]

Counts IV and V: State Law Claims. Defendants finally argue that they are entitled to official immunity because the decision to detain and transport Plaintiff was a discretionary act. Plaintiff argues the acts were ministerial and not entitled to official immunity. Both parties cite **Kanagawa v. State ex rel. Freeman**, 685 S.W.2d 831 (Mo. 1985) (en banc), overruled on other grounds, Alexander v. State, 756 S.W.2d 539 (Mo. 1988) (en banc).

"Generally speaking, discretionary acts, for purposes of official immunity, involve the exercise of reason in developing a means to an end, and the employment of judgment to determine how or whether an act should be performed or a course pursued." **Harris v.**

---

[5] Although Plaintiff does not clearly specify which defendants she is naming in Count III, the Court agrees with Defendants that it is evident from the context that she is referring to the Board members. Plaintiff also makes a reference in Count III to "Defendant's St. Louis Metropolitan Police Department's officers." The Department, however, is not a defendant.

**Munoz**, 43 S.W.3d 384, 387 (Mo. Ct. App. 2001). "By contrast, a ministerial function is one that 'a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to [the officer's] own judgment or opinion concerning the propriety of the act to be performed.'" **Id.** (quoting Charron v. Thompson, 939 S.W.2d 885, 886 (Mo. 1996) (en banc)) (alteration in original).

Plaintiff's argument why the officers' acts were ministerial establishes the opposite. She argues they were acting out of spite and malice and to harass and intimidate her after she threatened to report her. In other words, they used their judgment to perform acts to achieve an end.

## Conclusion

Plaintiff has failed to establish the existence of a genuine dispute of material fact as to whether the Board members may be sued in Counts I and II in their individual capacities; whether they may be liable under the allegations in Count III; and whether Lattimore and Smith are entitled to official immunity against the claims in Counts IV and V. There is a genuine issue of material fact sufficient to preclude summary judgment as to the allegations in Counts I and II against Lattimore and Smith. And, the law of case doctrine precludes the reassertion of claims in Counts I and II against the Board members in their official capacities.

The only issues remaining to be tried, therefore, are Plaintiff's claims in Counts I and II against defendants Jerry Lattimore and Andre Smith. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. [Doc. 66] It is **GRANTED** insofar as the claims against The City of St. Louis Board of Police Commissioners Jo Ann Freeman, Michael Quinn, Julius Hunter, Christopher Goodson, Bartholomew Saracino, and Francis G. Slay,

Mayor, are DISMISSED and insofar as Counts III through V, inclusive, are also DISMISSED. It is **DENIED** as to the claims in Counts I and II against Jerry Lattimore and Andre Smith.

**IT IS FURTHER ORDERED** that a final pretrial conference in this case shall be held on **March 29, 2007**, at **10 o'clock in the morning** in **chambers**.

<u>/s/ Thomas C. Mummert, III</u>
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this <u>9th</u> day of February, 2007.